**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **SHANTA MILES;** ) | |
| **JACQUELINE TURNER;** ) | |
| **KATHY ALLEN;** ) | |
| **JOSEPH ALLEN;** ) | |
| **CENQUETTA HARRIS; and** ) | |
| **CORA HAYES,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **V.** ) | **Case No.:  3:17-cv-160-JAG** |
| ) | |
| **RICHMOND REDEVELOPMENT &** ) | |
| **HOUSING AUTHORITY** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. The Richmond Redevelopment and Housing Authority (RRHA) failed to properly set
and implement utility allowances as required by federal law, resulting in unlawful excessive
charges to Plaintiffs and other tenants of RRHA, in violation of their leases and federal law.  The
unlawful utility charges resulted in late charges to many tenants' accounts that otherwise would
not have been added.  Furthermore, the RRHA improperly classifies utility charges as rent,
resulting in allegations of failure to pay rent when those amounts remain unpaid.  The excessive
charges have resulted in hardship for all Plaintiffs and other tenants, who are low-income
individuals.  These unlawful charges have in some cases resulted in eviction or threat of eviction
to tenants and have kept other tenants from moving on to other affordable housing.

1

2. Since October 2014, the RRHA has also incorrectly calculated the utility surcharges billed to many tenants, causing them to be further overcharged for their electricity usage.

3. The United States Housing Act, 42 U.S.C. § 1437a(1)(A) (the Housing Act), and its implementing regulations, 24 C.F.R. § 965.501 *et seq*, mandate that RRHA not charge public housing tenants more than thirty percent (30%) of their monthly adjusted income for rent and utilities.  To comply with the Housing Act, public housing agencies like RRHA must use a specific process to set, implement, and annually review an adequate allowance to cover reasonable consumption of utilities.  The RRHA is prohibited from classifying utility charges as rent.

4. Beginning in November 2012 and continuing through the present, the RRHA violated federal law when it failed to properly set and implement its utility allowances. RRHA violated federal law when it incorrectly calculated the utility surcharges. RRHA further violated federal law when it collected excess utility consumption surcharges from public housing tenants.

5. In addition, RRHA has assessed residents who have been charged the excess utility allowances with late fees and treated those charges as rent.

6. The Plaintiffs bring this class action on behalf of all present and former RRHA residents who since November 2012 have been subject to the unlawful utility allowances and charges.

7. The Plaintiffs ask the Court to declare RRHA's setting and implementation of utility allowances and excess utility consumption surcharges was arbitrary, capricious, and in violation of federal law.  The Plaintiffs ask the Court to require the RRHA to set and implement utility allowances and excess utility consumption surcharges which comply with federal law.  The Plaintiffs ask the Court to enjoin RRHA from classifying utility charges as rent and from

charging late fees on such charges.  The Plaintiffs also ask the Court to require the RRHA to provide a refund and/or credit of all illegally charged excess utility consumption surcharges, illegally calculated utility consumption charges and late fees.

## JURISDICTION

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1337. This case arises under the Housing Act, 42 U.S.C. § 1437a *et seq.*, as amended, and 42 U.S.C. § 1983, and a private right of action exists under *Wright v. Roanoke Redev. and Housing Auth.*, 479 U.S. 418, 107 S. Ct. 766 (1987).

9. Supplemental jurisdiction over the state law claims asserted herein is conferred upon this Court by 28 U.S.C. § 1367(a).  The transactions and occurrences giving rise to the Plaintiffs' state law claims arose out of the same common nucleus of operative facts as those giving rise to their federal law claims.  The state law claims asserted herein form part of the same case or controversy as the federal law claims.

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

11. Plaintiff Shanta Miles is a former public housing resident of an RRHA facility and lives in Richmond, Virginia.

12. Plaintiffs Kathy and Joseph Allen are public housing residents of an RRHA facility and live in Richmond, Virginia.

13. Plaintiff Jacqueline Turner is a public housing resident of an RRHA facility and lives in Richmond, Virginia.

14. Plaintiff Cenquetta Harris is a public housing resident of an RRHA facility and lives in Richmond, Virginia.

15. Plaintiff Cora Hayes is a public housing resident of an RRHA facility and lives in Richmond, Virginia.

16. Defendant Richmond Redevelopment and Housing Authority is a duly organized and recognized agency of the State of Virginia under the Code of Virginia, § 36-4 with the power to sue and be sued. The RRHA owns and operates nearly 4000 units as public housing in the City of Richmond in several different locations.

## FACTS

### RRHA Operates Under Federal Requirements

17. The RRHA has entered into an Annual Contributions Contracts ("ACC") with the U.S. Department of Housing and Urban Development (HUD) whereby HUD makes annual contributions to subsidize the cost of operating and managing low-income public housing.

18. In consideration for receiving financial assistance from HUD, the RRHA agrees in the ACC to comply with HUD requirements for the development and operations of public housing, including the setting of adequate utility allowances.

19. The receipt of such federal funds requires the RRHA to operate its housing units in accordance with the requirements of the Housing Act and applicable HUD regulations.

20. Under those federal requirements, the RRHA must undertake certain responsibilities and perform certain actions to protect and benefit public housing residents including the Plaintiffs and the class.

21. The public housing residents in Richmond, Virginia are the intended beneficiaries of the ACC between HUD and the RRHA.

### Rent and Other Charges

22. Under the Brooke Amendment to the Housing Act, except in limited circumstances, the maximum rent that the RRHA can charge its residents may not 30% of the family's monthly adjusted income. 42 U.S.C. § 1437a(a)(1)(A).

23. This maximum-rent figure must include within it an allowance for the "monthly cost of a reasonable consumption of [tenant-paid] utilities…by an energy-conservative household of modest means, consistent with the requirements of a safe, sanitary and healthful living environment." 24 C.F.R. § 965.505(a).

24. Under federal law, other than rent which is capped at 30% of monthly adjusted income, the RRHA may bill tenants only for approved fees.

25. Pursuant to 24 C.F.R. § 966.4(b), only 4 non-rent charges are ordinarily permissible: 1) maintenance and repair beyond normal wear and tear, 2) consumption of excess utilities, 3) reasonable late fees, and 4) security deposits.

Excess Utility Consumption Surcharges

26. As set forth in 24 CFR § 965.502, to implement the process by which the rent charge is to include a reasonable consumption of utilities, the RRHA is required to establish utility allowances for all check metered utilities that are furnished to tenants.

27. The RRHA must also establish "surcharges for utility consumption in excess of the allowances." 24 CFR § 965.506(a).

28. The RRHA is required to "maintain a record that documents the basis on which allowances and scheduled surcharges" are established. 24 C.F.R. § 965.502(b).

29. The records must be available for inspection by residents. 24 C.F.R. § 965.502(b).

30. The RRHA must state "the basis for calculating excess utility surcharges in its schedule of allowances." 24 C.F.R. § 965.506(a).

31. In establishing the allowance rate, the RRHA must consider at least nine HUD-enumerated factors set forth in 24 C.F.R. § 965.505(d). These factors include the following: (1) the equipment and functions intended to be covered by the allowance;

(2) the climate of the location of the project;

(3) the size of the unit and the number of occupants per unit;

(4) the type of construction and design;

(5) the energy efficiency of the housing authority supplied appliances;

(6) the utility consumption requirements of the appliances supplied by the tenant;

(7) the physical condition of the project;

(8) temperature levels intended to be maintained in the unit; and

(9) the temperature of hot water for domestic use. *Id.*

32. HUD does not review or approve RRHA's schedule of allowances or surcharges prior to implementation. 24 C.F.R. § 965.502(d).

33. The RRHA must annually review the basis on which its utility allowances are established, and make revisions to that allowance as necessary to ensure that the allowance is reasonable. 24 C.F.R. § 965.507.

<u>Utility Allowance Implementation Requirements</u>

34. For the RRHA to assess excess utility surcharges against residents, it must first follow specific procedures.

35. At least 60 days before implementing excess utility surcharges, the RRHA must give notice to all residents of the proposed utility allowances and surcharges. 24 C.F.R. § 965.502(c).

36. The RRHA must "describe with reasonable particularity the basis for determination of the allowances, scheduled surcharges, or revisions, including a statement of the specific items

6

of equipment and function whose utility consumption requirements were included in determining the amounts of the allowances or scheduled surcharges." 24 C.F.R. § 965.502(c).

37. The RRHA must comply with all lease requirements for issuance of notices by the housing authority to tenants. 24 C.F.R. § 965.502(c).

38. The RRHA must inform tenants of the location where the documents that form the basis on which the allowances and scheduled surcharges are established, maintained, and available for inspection. 24 C.F.R. § 965.502(c).

39. The RRHA must "provide all residents an opportunity to submit written comments during a period expiring not less than 30 days before the proposed effective date of the allowances or scheduled surcharges." 24 C.F.R. § 965.502(c).

40. These written comments must be retained by the RRHA and available for inspection by tenants. 24 C.F.R. § 965.502(c).

41. The RRHA must also adopt criteria and procedures for granting adjustments to the utility allowance for residents who are elderly, ill, or disabled and whose special needs require them to consume utilities in excess of the allowances, or tenants with special factors affecting utility usage not within the control of the resident. 42 U.S.C. § 1437; 24 C.F.R. § 965.508.

42. The criteria for granting the relief in 24 C.F.R. § 965.508 must be adopted at the time the RRHA adopts its methods and procedures for determining utility allowances.

43. Notice of the availability and process to request for relief from utility surcharges must be given to tenants in the notice to all residents of the proposed allowances and scheduled surcharges.

44. The RRHA must also identify the housing authority employee with whom tenants may contact for relief and list the criteria for granting relief. 24 C.F.R. § 965.508.

45. The RRHA is also required to "state the basis for determination of [charges for consumption of excess utilities]" in the lease. 24 C.F.R. § 966.4(b)(2).

46. To "state the basis" for utility surcharges, the RRHA lease should provide the allowance for the unit and the charge for usage in excess of the allowance. 24 C.F.R. § 966.4(b)(2).

47. When the RRHA charges a tenant a utility surcharge, payment by the tenant cannot be made due until at least two weeks after it gives written notice of the charges. 24 C.F.R. § 966.4(b)(4).

48. A written notice requesting payment of charges for excess consumption constitutes a "notice of adverse action." 24 C.F.R. § 966.4(b)(4).

49. When issuing a notice requesting payment of charges for excess utility consumption, the RRHA must comply with 24 C.F.R. § 966.4(e)(8) and must inform the tenant of the "specific grounds" for the imposition of the surcharge. 24 C.F.R. § 966.4(e)(8)(i).

50. When issuing a notice requesting payment of charges for excess utility consumption, the RRHA must advise tenants in the notice of their right to request a grievance hearing. 24 C.F.R. § 966.4(e)(8)(ii)(A).

<u>Public Housing Occupancy Guidebook</u>

51. RRHA must conduct its operations in compliance with the HUD Public Housing Occupancy Guidebook (Guidebook).

52. In Section 14.3 of that Guidebook, the following requirements are stated about charging utility surcharges:

> The PHA must establish fair and reasonable utility allowances for individually metered utilities. The objective in establishing an allowance is to estimate as closely as possible a reasonable consumption of utilities by an energy-conscious household.

8

53. Additionally, that Guidebook at Section 17.3 states that charging late fees is optional and not mandatory and that any such charges must be reasonable.

54.  Under Section 17.6 of the Guidebook, the RRHA may not consider utility surcharges as rent and may not treat any such unpaid charges as unpaid rent.

Virginia Late Fees Requirements

55. The RRHA's relationship with its tenants is also regulated by the Virginia Residential Landlord and Tenant Act (VRLTA), Virginia Code § 55-248.15:1.

56. Like the HUD Guidebook, the VRLTA requires that any late fee charged by the RRHA be reasonable.

57. Under Virginia law, "where the damage resulting from a breach of contract is susceptible of definite measurement (as when the breach consists of failure to pay a sum of money) or where the stipulated amount would be grossly in excess of actual damages, courts of law usually construe such a stipulation as an unenforceable penalty." *Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745, 747 (1987).

58. If a liquidated damages clause is unreasonable, the entire clause is an unenforceable penalty. *Taylor*, 353 S.E.2d at 747.

59. The Court may not reform the lease on behalf of landlords to provide for a reasonable late fee where the provision was unlawful from the beginning.

Unlawful Actions of RRHA

60. Beginning in November 2012 and continuing through the present, the RRHA has charged its tenants utility surcharges without having taken the required steps necessary before it assesses such charges.

9

61. As part of this process, the RRHA sent out an initial notice in March 2012 (Exhibit A), followed by an implementation notice for January 2013 (Exhibit B).

62. In particular, from November 2012 through the present, the RRHA has failed to comply with its federal requirements in the following ways:

a. failed to maintain a record that documents the basis on which allowances and surcharges are established;

b. failed to describe with reasonable particularity the specific items of equipment and function that were included in the allowances and surcharges;

c. failed to inform the tenants where to find the documents which the form the basis of the determination of the allowances and surcharges;

d. failed to adopt specific criteria and procedures for granting adjustments to the utility allowances for elderly, ill, or disabled, or for tenancies with special factors affecting utility usage not within their control;

e. failed to identify the housing employee to be contacted to request relief from utility surcharges;

f. failed to inform tenants of the specific criteria for being granted that relief;

g. failed to provide notice to tenants of their grievance rights when assessing surcharges;

h. failed to treat tenants' complaints and objections to surcharges as requests for grievances nor allowed access to the grievance procedure for such complaints;

i. failed to modify its leases to state the allowance used for the determination of utility surcharges; and

j. failed to modify its leases to include the surcharge amount for utility consumption in excess of the allowance.

63. For surcharges billed to tenants from November 2012 through July 2014, in addition to the failures above, the RRHA failed to provide proper notice 60 days ahead of time that contained all the information required by 24 C.F.R. § 965.502(c) and 24 C.F.R. § 965.508.

64. Beginning in May 2014 with surcharges that were billed in July 2014, the RRHA assessed allowances under a revised procedure implemented by a notice sent on or about February 15, 2014 (notice sent to Mosby Court residents is attached as Exhibit C).

65. Although this notice cured part of the prior deficiencies noted in Paragraph 61, it still did not contain all the information required by 24 C.F.R. § 965.502(c) and 24 C.F.R. § 965.508.

66. Furthermore, when the RRHA implemented revised allowances and surcharges, RRHA did not cure the deficiencies noted in Paragraph 61, and the RRHA's form lease was not modified. (Exhibit D, RRHA form lease in effect since 2012).

67. Instead of establishing a contract with tenants setting forth the allowance for each unit and the surcharge amount for usage beyond the allowance and instead of recognizing the adjustment process set forth in 24 C.F.R. § 965.506 and 24 C.F.R. § 965.502(c), RRHA's form lease states that "RRHA reserves the right to adjust the utility charges, at any time, based on increased costs, consumption and/or utility rates, as is deemed necessary at its sole discretion."

68.  For the allowances implemented in May 2014 to the present, RRHA set the allowances far below the amount necessary for a reasonable consumption by an energy-conservative household of modest means consistent with the requirements of a safe, sanitary and healthful living environment.

69. Because RRHA never properly implemented the allowance and surcharge process, no surcharges should have been charged since November 2012.

70. Because the allowances were set too low, tenants have been charged excessive surcharges since May 2014 despite the minor corrections to the process RRHA made at that time.

71. RRHA's utility allowances are not fair and reasonable and RRHA's reliance on the allowances to assess surcharges against tenants constitutes an abuse of discretion.

72. By June 2015, RRHA knew, or should have known, that its allowances were set too low.

73. For the ten months following the May 2014 implementation, at its six largest sites (Creighton, Fairfield, Gilpin, Hillside, Mosby and Whitcomb) at least 92% of families were assessed utility surcharges for one or more months.

74. Over that same period, the new allowances resulted in surcharges on a monthly average of 86% of all households for the six largest sites.

75. This extremely high rate of households with surcharges is far different than what RRHA stated in March 2012: "For most households, electrical use will be near the allowance level. Generally, only a few residents will have high allowance charges due to excessive electricity use." (Exhibit A, bottom of page 1).

76. Despite knowing that its allowances were set too low and that each month the overwhelming majority of its tenants were being assessed utility surcharges, RRHA did not revise the allowances.

77. Since October 2014, the RRHA, through its third-party vendor (Yardi Energy Solutions ("YES"), has incorrectly calculated many tenant's surcharges causing them to be illegally overbilled for their electricity consumption.  From October 2014 through November 2016, the amount of the overbilling has been determined to be $229,946.87.

78. Through this entire time period, the utility surcharges have resulted in RRHA charging tenants late fees when tenants had paid their rent amount but not the utility surcharge amount.

79. RRHA charges all its tenants a set late fee of $15.00 regardless of their initial rent amount (See Exhibit D, Para. 2).

80. Fees for late payment of the utility surcharges and the utility surcharges were then included as part of the rent that had to be paid. (See Exhibit D, pg. 1, Definition of "Rent").

81. In this way, the late fees were improper assessed for something that was not rent, and then the late fees were improperly categorized as rent.

<u>Plaintiff Shanta Miles</u>

82. Shanta Miles, former tenant, lived in RRHA's Mosby Court with her two children, ages 11 and 13.

83. Her 11-year old son suffers from asthma, has several other severe allergies and requires air conditioning during the warm months.

84. Ms. Miles had been charged excess utilities since February 2013. Despite this, Ms. Miles made an effort to conserve energy within her household each month.

85. Concerned about the increasing cost of electricity in her home, Ms. Miles requested the following from RRHA: (1) a basis for the excess charges, (2) inspection of her sub-meter to ensure it is functioning properly, and (3) an inspection of her home to address electrical problems.

86. Because of financial hardship, Ms. Miles' rent was reduced to $50 per month in December 2014.

87. She filed a request for relief from paying excess utilities at RRHA on two occasions.

88. She never received a response to her requests for relief.

89. As a result of the utility surcharges, she incurred numerous late fees.

90. The utility surcharges prevented Ms. Miles from qualifying for a Section 8 Housing Choice Voucher because of her outstanding balance.

<u>Plaintiff Jacqueline Turner</u>

91.  Jacqueline Turner lives in RRHA's Gilpin Court.

92. She has made an effort to conserve energy within her home by using energy-efficient lighting and limiting use of appliances.

93. Due to the temperature within her home during the summer months, Ms. Turner uses her one air conditioner and promptly turns it off as soon as it is cool enough to use just fans to circulate the air.

94. Since 2013, Ms. Turner has received utility surcharges every month and late fees and notices of lease termination nearly every month.

95. Ms. Turner has filed two grievances requesting relief from her excess utility charges, but has neither received a written response nor been granted an informal hearing.

<u>Plaintiffs Kathy and Joseph Allen</u>

96.  Kathy Allen and her husband, Joseph Allen, live in a two-bedroom apartment in RRHA's Hillside Court.

97. Because both are disabled, Mr. and Ms. Allen rely on SSI and food stamps as their only source of income.

98. Mr. and Ms. Allen make efforts to conserve energy in their home.

99. They mostly utilize appliances that are supplied by RRHA, but because of their special needs to maintain a habitable climate within their home, the Department of Social Services recently installed one window unit air conditioner in their home.

100. Since February 2013, the Mr. and Ms. Allen have been charged utilities surcharges for 30 consecutive months since February 2013.

101. Since 2013, Mr. and Ms. Allen have been charged late fees even in months when they made a timely payment equal to the full amount of their rent, and the only overdue payments on their account were utility surcharges and other charges.

102. As a result of this additional financial hardship plus mounting late fee charges, they have had difficulty staying current with their rent, and this has resulted in unlawful detainer lawsuits being filed against them by RRHA.

103. Mr. and Ms. Allen requested relief from excess utilities from RRHA on three occasions beginning in 2013; when they filed their most recent request in early 2015, they were told that the request was "no good."

### Plaintiff Cenquetta Harris

104.  Cenquetta Harris lives in RRHA's Fulton community, with her three children.

105. Because of financial hardship, Ms. Harris pays minimum rent of $50 per month.

106.  Ms. Harris has been charged excess utilities since January 2013 and has accumulated an account balance over $1800.00, which includes numerous late fees for unpaid utility charges.

107. Ms. Harris practices energy conservation by using very few of her own appliances, low wattage light bulbs, and by unplugging most appliances when not in use.

108. She acquired her only air conditioning unit from the Department of Social Services in 2014.

109. Ms. Harris has, on at least three occasions, requested RRHA to fix conditions in her unit relating to a crack in her door and loose window panes, which make it very difficult to efficiently heat and cool her home.

110. She has also filed grievances to request relief from excess utility charges but has never been given the opportunity to have an informal meeting to address her concerns.

111. As a result of the utility surcharges, Ms. Harris has been charged late fees, subjected to unlawful detainer lawsuits by RRHA and is at risk of being evicted as RRHA obtained a judgment for possession of her home in March 2015.

<u>Plaintiff Cora Hayes</u>

112. Cora Hayes lives in RRHA's Randolph community.

113. Since 2013, Ms. Hayes has been charged excess utilities for 39 consecutive months.

114. She has also filed grievances to contest the charges but did not receive adequate resolution of these grievances.

115. On many occasions beginning in October 2014, Ms. Hayes has been charged late fees even in months when she made a timely payment equal to the full amount of her rent, and the only overdue payments on her account were utility surcharges and other charges.

## **CLASS ACTION ALLEGATIONS**

116. The individual Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

117. Plaintiffs represent the following class:  present and former public housing residents in the RRHA who were subject to utility allowances and excess utility consumption surcharges that were implemented beginning November 2012 through the present.

118.  For the class, utility surcharges were improperly assessed and caused residents to pay more than 30% of their monthly adjusted incomes as rent.

119. The number of individuals in the class exceeds 3,000 individuals.

120. The relatively small size of individual claims, the geographical dispersion of the class, and the financial circumstances of the class members make the maintenance of separate actions by each class member economically infeasible.  The class is so numerous that joinder of all members is impracticable.

121. Questions of law and fact common to the class include:

a.  Whether the RRHA's utility allowances and excess utility consumption surcharges were set and implemented in accordance with federal law;

b.  Whether the RRHA's failure to properly set and implement utility allowances and excess utility consumption surcharges made residents spend more than 30% of their monthly adjusted income on rent;

c.  Whether the RRHA's illegal calculation of utility consumption surcharges made residents spend more than 30% of their monthly adjusted income on rent; and

d.  Whether the RRHA improperly considered late fees as rent and/or charged late fees on utility surcharges that were not rent.

122. The claims of the named Plaintiffs are typical of the claims of the class.

123. The named Plaintiffs have the same interests as the other members of the class and will vigorously prosecute these interests on behalf of the class.

124. Plaintiffs will fairly and adequately represent the interests of the class.

125. Plaintiffs know of no conflicts of interest among members of the class.

126. Plaintiffs are represented by attorneys who are experienced litigators and who have handled numerous actions in the federal court and will adequately represent the interests of the entire class.

127. A class action is appropriate under Rule 23(b)(2) because the RRHA has acted on grounds generally applicable to the class by failing and refusing to set and implement utility allowances and excess utility consumption surcharges making appropriate injunctive and declaratory relief with respect to the class as a whole.

128. A class action is appropriate under Rule 23(b) (3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## COUNT I - VIOLATION OF THE U.S. HOUSING ACT

129. Paragraphs 1 through 128 are re-alleged and incorporated herein.

130. RRHA's actions in 1) improperly setting and implementing utility allowances and surcharges, and 2) imposing inadequate utility allowances, excessive utility surcharges, illegally calculated utility charges and improper late fees are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, have deprived Plaintiffs and the class of the benefits of RRHA's public housing program, and have resulted in RRHA assessing surcharge fees when it had no right to do so.

131. Such acts violate the United States Housing Act, as amended, 42 U.S.C. § 1437a(a)(1)(A), and the federal regulations at 24 C.F.R. § 965.501, *et. seq.*

18

132. RRHA's actions in imposing late fees for unpaid utility fee and treating all utility fees and late fees as rent violates the Housing Act implemented through regulations promulgated by HUD, including the Guidebook at Section 17.3 and 17.6.

133. The RRHA's violation of the Plaintiff's rights under the Housing Act is actionable under 42 U.S.C. § 1983.

134. As a result of Defendant's violations of the Housing Act in charging tenants more rent than is allowed under federal law, Plaintiffs and the class they seek to represent have suffered harm and are entitled to declaratory, injunctive, and monetary relief.

## COUNT II: VIOLATIONS OF RESIDENTIAL LEASE

135.  Paragraphs 1 through 134 are re-alleged and incorporated herein.

136. The lease between RRHA and the tenants fails to provide for the assessment of utility surcharges because it does not state the utility allowance amount, describe the basis for determination of charges for consumption of excess utilities or list the amounts charged for usage in excess of the allowance.

137. RRHA has breached the lease by assessing charges not set forth in the lease. 24 C.F.R. § 966.4(b)(2).

138. As a result, Plaintiffs and the class they represent have suffered damages and they are entitled to declaratory, injunctive, and monetary relief.

## COUNT III: VIOLATION OF THE ANNUAL CONTRIBUTIONS CONTRACT (ACC)

139.  Paragraphs 1 through 138 are re-alleged and incorporated herein.

19

140.  As third party beneficiaries of the ACC, Plaintiffs and the class they seek to represent are entitled to seek the benefit of that contract.

141. That contract required RRHA to comply with the HUD regulations and Guidebook regarding utility surcharges and whether late fees could be assessed on those surcharges.

142. RRHA has breached that obligation by not complying with the HUD regulations and Guidebook regarding utility surcharges and assessing late fees on those surcharges.

143.  As a result, Plaintiffs and the class they represent have suffered damages and they are entitled to declaratory, injunctive, and monetary relief.


## COUNT IV:  VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT

144. Paragraphs 1 through 143 are re-alleged and incorporated herein.

145. Defendant is a supplier and the lease between Plaintiffs and Defendant is a consumer transaction, as defined in Va. Code Sec. 59.1-198.

146. Defendant represented to Plaintiffs, as well as other tenants similarly situated, that Plaintiffs were required to pay utility surcharges, and that they owed late fees on those surcharges as a form of rent.

147. The RRHA attempted to charge and collect these excess and improper fees.

148. Defendant's acts in representing that fees were owed, and in charging and collecting fees constitute a violation of Va. Code Sec. 59.1-200(13) and (14).

149. Each attempt to charge or collect an unlawful late fee on a utility surcharge is a separate prohibited act under Va. Code Sec. 59.1-200.

150. Such actions were not the result of a bona fide error.

151. Such actions were negligent.

20

152. In the alternative, such actions were willful so as to allow for treble actual damages, or a minimum of $1,000.00 per violation.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court will:

1. Assume jurisdiction of this case;

2. Certify the identified classes pursuant to F.R.C.P. 23(a), (b)(2) and (b)(3);

3. Issue a declaratory judgment that:

A. The RRHA violated the United States Housing Act of 1937, 42 U.S.C. § 1983, the lease provisions which Plaintiffs and the class were required to sign, and the Annual Contributions Contract by its failure to improperly set and administer utility allowances;

B. The RRHA violated state common law, the Virginia Consumer Protection Act, and the U.S. Housing Act by charging late fees as rent on utility surcharges that were not rent;

4. Enter preliminary and permanent injunctions enjoining the RRHA from failing to comply with the U.S. Housing Act, the residential lease, and the Annual Contributions Contract by:

A. Constructing new utility allowances and keeping such allowances up to date sufficient to ensure that tenants' rent, including reasonable electric utilities, do not exceed 30% of monthly adjusted income;

B. Promulgating and implementing procedures to adjust electric utility allowances when a tenant demonstrates that a higher allowance is needed because a member of

the household is disabled, elderly or ill or that the higher usage is due to factors beyond the tenant's control;

C. Repairing tenants' check meters in a timely manner;

D. Including in the lease notice of the tenants' electric utility allowances;

E. Including in the lease notice of the available administrative procedure to contest utility surcharges;

F. Ceasing to evict tenants for failing to pay excess electric utility charges prior to the annual updating of the allowances; and

G. Including in the lease notice that utility surcharges are not considered rent and that failure to pay such charges does not allow for late charges or lease termination for lack of rent payment.

5. Require the RRHA to reimburse Plaintiffs and class members for all utility surcharges imposed and collected, and all improper late fees imposed and collected on such charges, and to remove from its books all illegally calculated utility consumption charges and related late charges imposed but collected.

6. Award Plaintiffs $1000.00 or treble actual damages for each violation of the VCPA;

7. Award the Plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988;

8. Award prejudgment interest on the monetary relief provided to Plaintiffs and the members of the classes;

9. Award attorneys' fees and costs; and

10. Grant the Plaintiffs such other relief as may be just and equitable.

Respectfully submitted this 24th day of February 2017.

/s/Sylvia Jones
Sylvia Cosby Jones, VSB No. 35870
LEGAL AID JUSTICE CENTER
123 East Broad Street
Richmond, VA 23219
(804) 643-1086
(804) 643-2059 Facsimile
Email: sylvia@justice4all.org

Brenda Castañeda, VSB No. 72809
LEGAL AID JUSTICE CENTER
123 East Broad Street
Richmond, VA 23219
(434) 977-0553
(434) 977-0558 Facsimile
Email: brenda@justice4all.org

Mary DeVries, VSB No. 88186
LEGAL AID JUSTICE CENTER
123 East Broad Street
Richmond, VA 23219
(804) 643-1086
(804) 643-2059 Facsimile
Email: maryd@justice4all.org

Marcellinus L.M.B. Slag, VSB No. 29833
LEGAL AID JUSTICE CENTER
123 East Broad Street
Richmond, VA 23219
(804) 643-1086
(804) 643-2059 Facsimile
Email: marcel@justice4all.org

/s/Thomas D. Domonoske
Thomas D. Domonoske, VSB No. 35434
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
(757) 930-3660
(757) 930-3662 Facsimile
Email: tom@clalegal.com

*Attorney for Plaintiffs*