**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| SHANTA MILES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00160-JAG |
| | ) | |
| RICHMOND REDEVELOPMENT & | ) | |
| HOUSING AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

**Introduction**

Plaintiffs seek certification of a class under Rule 23(b)(3) of all current and former

Richmond public housing residents since November 1, 2012, through October 31, 2016, who

were subject to the Richmond Redevelopment and Housing Authority's (RRHA's) procedures

regarding utility allowances and late fees.  Plaintiffs and Defendant have reached a settlement

agreement which the parties believe is fair and just and adequately resolves Plaintiffs' claims.  A

class action cannot be compromised or settled without the approval of the Court. Fed. R. Civ. P.

23(e).  Prior to addressing the adequacy of a proposed settlement, the Court must determine

whether the class, as agreed to by the parties, may be certified for purposes of the settlement.

*Amchem Prod. v. Windsor*, 521 U.S. 591, 613 (1997).

1

Under Rule 23's flexible approach courts may conditionally or provisionally certify a class for purposes of settling the case. *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 793-794 (3d Cir. 1995) (collecting cases and authority). A court may grant conditional approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See Amchem,* 521 U.S. at 613; *see also South Carolina National Bank v. Stone,* 749 F. Supp. 1419, 1428 (D.S.C. 1990).

If the Court determines that a settlement class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement. *Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 547 (S.D. Ohio 2000).  First, the Court must preliminarily approve the proposed settlement. *Id.*  Second, members of the class must be given notice of the proposed settlement. *Id.*  Third, the Court must hold a hearing, after which the Court decides whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. *Id.*  These three steps protect the class members' procedural due process rights and enable the Court to fulfill its role as the guardian for the class's interests.  The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *City Partnership Company v. Atlantic Acquisition L.P.,* 100 F.3d 1041, 1043-44 (1st Cir. 1996).

For the following reasons, the Plaintiffs request that the Court certify a settlement class, preliminarily approve the terms of the settlement, and begin the three-step process for granting final approval.

2

### I.   Description of the Litigation and the Proposed Settlement

The Plaintiffs are low-income residents and former residents of federally-subsidized public housing owned by the Richmond Redevelopment and Housing Authority ("RRHA").   The Plaintiffs brought this case against RRHA under the United States Housing Act ("Housing Act"), 42 U.S.C. § 1437 *et seq.*, 42 U.S.C. § 1983, Virginia law of contract, and the Virginia Consumer Protection Act.   A description of the legal and factual basis for the claims, the procedural history of this case, the positions of the parties, and the terms of the proposed settlement follows.

### A.   Legal and Factual Basis for the Claims

Plaintiffs' claims arise under the Housing Act, 42 U.S.C. § 1437a(a)(1)(A); the dwelling lease signed by the Plaintiffs; RRHA's Annual Contributions Contract ("ACC") with United States Department of Housing and Urban Development ("HUD"), of which the Plaintiffs allege that they are third-party beneficiaries; and the Virginia Consumer Protection Act ("VCPA").

1.   U.S. Housing Act claim

Under the Housing Act, 42 U.S.C. § 1437a(a)(1)(A), and its implementing regulations, 24 C.F.R. § 965.501, *et seq.*, tenants residing in RRHA's units may be charged no more than thirty percent of their adjusted gross income as rent and utilities. This thirty percent figure must include an allowance for the "monthly cost of a reasonable consumption of [tenant-paid] utilities . . . by an energy-conservative household of modest means, consistent with the requirements of a safe, sanitary, and healthful living environment." 24 C.F.R. § 965.505(a). RRHA is required to set a utility allowance after considering a number of required factors, 24 C.F.R. § 965.505(d), and

3

must follow a specific process to implement the allowances. 24 C.F.R. §§ 965.501-508. Plaintiffs claim that RRHA violated the Housing Act and its implementing regulations by 1) improperly setting and implementing utility allowances and surcharges, and 2) imposing inadequate utility allowances, excessive utility surcharges, illegally calculated utility charges through billing errors and improper late fees.

RRHA owns and manages a total of 3,979 units at various public housing sites in the City of Richmond and receives federal funds to operate those units from HUD.  Approximately 3,507 of RRHA's units have individually metered utilities and are at issue in this case.[1]  The electric utility allowances that RRHA applied to residents from November 2012 through April 2014 was based on a utility study conducted in 1998.  The allowance applied to residents from May 2014 through October 2016 was based on a utility study conducted in December 2013. If a tenant's electricity usage in a month exceeds that permitted by the allowance, RRHA bills the tenant for the excess kilowatt hours at RRHA's average utility rate.

Beginning in November 1, 2012, RRHA charged tenants utility surcharges without first taking the required steps necessary before it assessed such charges.  Specifically, RRHA:

    a.   failed to maintain a record that documents the basis on which allowances and surcharges are established;

    b.   failed to describe with reasonable particularity the specific items of equipment and function that were included in the allowances and surcharges;

---

[1] There are 472 senior housing sites that are not individually metered, and therefore, not at issue in this case.

c.  failed to inform the tenants where to find the documents which the form the basis of the determination of the allowances and surcharges;

d.  failed to adopt specific criteria and procedures for granting adjustments to the utility allowances for elderly, ill, or disabled, or for tenancies with special factors affecting utility usage not within their control;

e.  failed to identify the housing employee to be contacted to request relief from utility surcharges;

f.  failed to inform tenants of the specific criteria for being granted that relief;

g.  failed to provide notice to tenants of their grievance rights when assessing surcharges;

h.  failed to treat tenants' complaints and objections to surcharges as requests for grievances nor allowed access to the grievance procedure for such complaints;

i.  failed to modify its leases to state the allowance used for the determination of utility surcharges; and

j.  failed to modify its leases to include the surcharge amount for utility consumption in excess of the allowance.

For surcharges for usage from November 2012 through April 2014, RRHA failed to provide proper notice 60 days ahead of time that contained all the information required by 24 C.F.R. § 965.502(c) and 24 C.F.R. § 965.508. For surcharges for usage from May 2014 through October 2016, RRHA again failed to provide proper notice that contained all the information required by 24 C.F.R. § 965.502(c) and 24 C.F.R. § 965.508.

5

For the allowances implemented from May 2014 through October 2016, RRHA set the allowances far below the amount necessary for a reasonable consumption by an energy-conservative household of modest means consistent with the requirements of a safe, sanitary and healthful living environment. The majority of tenants were billed for excess electric utilities each month (Complaint, at 12). All the Plaintiffs in this case state they have attempted to be reasonable users of utilities, but none have been able to keep their usage below the utility allowance. (Exhibits 1-5, Declarations of Shanta Miles, Jacqueline Turner, Kathy Allen, Cenquetta Harris, and Cora Hayes). Similarly, the majority of RRHA residents subject to a utility allowance and billing for excess electric usage have had to pay excess utilities.  For the ten months following the May 2014 implementation, at its six largest sites (Creighton, Fairfield, Gilpin, Hillside, Mosby and Whitcomb) at least 92% of families were assessed utility surcharges for one or more months. Over that same period, the new allowances resulted in surcharges on a monthly average of 86% of all households for the six largest sites (Complaint, at 12).

Since October 2014, RRHA has incorrectly calculated many tenant's surcharges, causing residents to be illegally overbilled utility surcharges in the amount of $241,835.45 (Complaint, at 13)[2].

RRHA's lease defines "rent" broadly to include all amounts owed or paid except a security or pet deposit (Complaint, Exhibit D, at 5).  A tenant's rent is limited to the amount determined by the PHA in accordance with HUD regulations and other requirements.  24 C.F.R.

---

[2] The overbilled utility surcharge amount was estimated to be $229,946.87 at the time the Complaint was filed. Since that time, RRHA has revised and provided a final overbilled surcharge amount of $241,835.45.

§ 966.4(b)(1). All charges in addition to rent must be listed in the lease. 24 C.F.R. § 966.4(b)(2).

Non-rent charges may not be called, or treated as, rent. 42 U.S.C. § 1437a(a)(1)(A); Public

Housing Occupancy Guidebook, at 17.6. Since November 2012, RRHA has treated utility

surcharges and late fees as rent, and charged a $15.00 late fee for nonpayment of utility

surcharges, even if a resident timely pays their rent. Since utility surcharges are not rent, late fees

were improperly assessed for non-rent amounts, and the late fees were improperly categorized as

rent.

     2.  <u>Breach of residential lease claim</u>

     Federal law requires RRHA to provide for charges to the tenant for excess utility

consumption.  RRHA must "state the basis for determination of [charges for consumption of

excess utilities]" in the lease. To "state the basis" for utility surcharges, the RRHA lease should

provide the allowance for the unit and the charge for usage in excess of the allowance. 24 C.F.R.

§ 966.4(b)(2).  RRHA's standard residential lease signed by all Plaintiffs provides that RRHA

will provide utilities and residents will be charged for electricity consumption that "exceeds

during any monthly utility billing period the allowance in kilowatt hours (KWH) of

ELECTRICITY posted at the Community Management Office." (Complaint, Exhibit D, page 5,

§ 4).  The lease between RRHA and the tenants fails to provide for the assessment of utility

surcharges because it does not state the utility allowance amount, describe the basis for

determination of charges for consumption of excess utilities or list the amounts charged for usage

in excess of the allowance. RRHA has breached the lease by assessing charges not set forth in

the lease. 24 C.F.R. § 966.4(b)(2).

3.  Breach of HUD Annual Contributions Contract claim

Every year RRHA enters into an Annual Contributions Contract ("ACC") with HUD, in which RRHA represents that it is complying with HUD's guidelines in order to be eligible for HUD funds. The Contract specifically requires that RRHA operate its program in compliance with the Housing Act. Plaintiffs allege that they are the intended third-party beneficiaries of the ACC and are entitled to enforce its provisions, and that RRHA breached the ACC by failing to comply with the Housing Act.

4.  Virginia Consumer Protection Act (VCPA) claim

Plaintiffs also allege that RRHA's representations to Plaintiffs, as well as other tenants, that Plaintiffs were required to pay late fees on unpaid utility surcharges as a form of rent constitute a violation of Va. Code § 59.1-200(13) and (14).  RRHA's attempts to charge and collect said late fees also constitute separate violations of Va. Code § 59.1-200.

**B.  Positions of the Parties**

1.  Plaintiffs' position

The Plaintiffs contend that RRHA failed to comply with the requirements of the Housing Act and its implementing regulations by failing to properly set and implement utility allowances. These violations also constitute a breach of the dwelling lease and the ACC. The unlawful utility surcharges resulted in improper late charges to many tenants' accounts that otherwise would not have been added, the charge and collection of which violated the VCPA. The Plaintiffs contend that if they prevailed on their claims, they would be entitled to a refund of all excess utility fees charged from November 2012 to the present because RRHA failed to comply with the legal

8

requirements for setting and implementing utility allowances. RRHA was thus without authority to charge excess utility surcharges. They also contend that they are entitled to a refund of all improperly charged late fees, and to prospective relief going forward to enforce RRHA's compliance with federal law.

    2.  <u>Defendant's position</u>

RRHA denies any and all allegations of wrongdoing and related legal conclusions which have arisen or may arise out of the circumstances resulting in this Class Action.  RRHA does not admit any wrongdoing or noncompliance with any federal, state, or local statute, public policy, tort law, contract law, common law, or of any other wrongdoing whatsoever

### C.  Procedural History

RRHA has shared many documents and records with Plaintiffs through both Freedom of Information Act requests and voluntary production, including data files of excess utility charges to class members.  The parties have also engaged in extensive settlement discussions since early 2016, participating in person and by counsel in mediation with the Honorable B. Waugh Crigler (Ret.) on two separate dates over several months, and multiple phone calls and emails. Subsequent negotiations were held on July 21, 2017, and October 13, 2017, before the Honorable Magistrate Judge Roderick C. Young. Each side is thus well-versed in the relevant facts and the arguments for and against liability, and both sides are confident that this settlement represents a reasonable resolution of this case.

### D.  Description of the Proposed Settlement

The proposed class definition is all current and former Richmond public housing residents since November 1, 2012, through October 31, 2016, who were subject to RRHA's procedures regarding utility allowances and late fees.  The proposed settlement includes provisions for prospective relief in the form of 1) agreed upon utility allowances going forward; 2) implementation of new individual relief notice, policies and procedures; 3) modification of electric utility bills, billing policies, and staff training; and 4) modification of RRHA's lease.   It also provides for retrospective relief through distribution of lump sum credits and/or payments by RRHA following notice to the proposed class members.  The proposed settlement provides the following essential terms:

    1.  <u>Prospective relief</u>:

RRHA has agreed to implement new utility allowances based on a historical data consumption study conducted by The Nelrod Company in late 2016.  RRHA has voluntarily implemented the new utility allowances retroactive to November 1, 2016.  As a result of its retroactive implementation, current and certain former tenants shall be entitled to a total of $79,590.00 in credits and payments for electricity use during the months of November and December 2016. Consumption allowances for the next three (3) years will be based on the 2016 study, subject to any HUD-mandated methodology to the contrary.  Any charges to tenants for excess utility consumption will be based only on the kWh usage above their allowance. Since adoption of the 2016 study is pursuant to a Settlement Agreement, class members agree to waive any notice and comment requirements under federal and/or state law in the interest of compromise.

RRHA has agreed to implement revised individual relief notice, policies and procedures for tenants who are elderly, disabled, or otherwise have special needs for electricity usage beyond their control.  Since adoption of the revised notice, policies and procedures is pursuant to a Settlement Agreement, class members agree to waive any notice and comment requirements under federal and/or state law in the interest of compromise. Plaintiffs have agreed to file no claim challenging the validity of said notice, policies and procedures, for a period of one year, and then only if Plaintiffs can show changed circumstances. RRHA shall notify tenants of the right to request relief upon their admission into the public housing program, at their initial lease execution and at their annual recertification appointments.  This notification shall be in writing and shall state the right to challenge the denial of any request for relief in accordance with the RRHA's grievance procedure. RRHA will notify tenants about the relief procedures and the contact staff person by posting the information in the management office, publishing it in the Admissions and Continued Occupancy Policy ("ACOP") and by providing a notification at each lease reading or renewal.

RRHA has also agreed to modify its utility bills so that residents are given specific information about the dates and readings of the submeters at the beginning and at the end of the period for which the bill is rendered, the amount of their kilowatt hour allowance, usage, overage, and the surcharge, in an agreed upon format.  RRHA has agreed to work to shorten the amount of time between receipt of the utility bill from Dominion and notice to tenants of the amount of any surcharge as much as reasonably practicable.  RRHA has further agreed to cover the customer charge from Dominion, so long as HUD will reimburse RRHA for these charges at

11

the same rate it reimburses RRHA for other operating costs.  RRHA will notify LAJC if or when HUD no longer reimburses RRHA. RRHA will ensure that its staff is trained regarding utility billing procedures, tenant requests for relief from utility billing, and the grievance procedure for tenants to contest charges if they believe they have been improperly billed.

RRHA has agreed to amend its lease to accurately inform tenants of the way in which they will be charged for excess utility usage, including information regarding their specific usage allowance, and will amend its lease to ensure that late charges and other non-rent charges are not treated as rent and will provide a copy of the draft lease to Plaintiffs' counsel for its review and recommendations.

2.  <u>Retrospective relief:</u>

The class will receive a gross recovery of $951,835.45, to be distributed as follows:

- Recovery for excess utility overcharges:     $600,000.00
- Recovery for late fee overcharges:           $110,000.00
- Recovery for overbilled utility surcharges:  $241,835.45

a.  Excess utility overcharges

For excess utility surcharges, distribution to eligible class members will be made as follows:

i.  $5,000.00 for incentive awards of $1,000.00 to each of the class representative households for pursuing the claims, for the expenses incurred attending meetings, mediations and hearings as well as personal

12

time spent advancing the litigation, and the personal risk taken while speaking up for their rights; and

ii.   The amount remaining, $595,000.00, on a pro rata basis to class members based on the amount of excess utility charges assessed to the tenant's account for usage between November 1, 2012, and October 31, 2016, with surcharge due dates from February 1, 2013, to January 1, 2017.

All class members who have been assessed excess utility charges for usage from November 1, 2012, until November 1, 2016, (the date RRHA implemented the new utility allowances) will receive a reimbursement of approximately 22 percent of what their household was billed in excess charges.

b.   Late fee overcharges

Distribution of late fee payments to eligible class members will be made to tenants who were charged late fees from February 1, 2013, to November 1, 2016, that were triggered by unpaid excess utility charges on a pro rata basis to class members based on the population of tenants who were assessed a late fee during that time.

c.   Overbilled utility surcharges

Distribution of billing error payments to eligible class members will be made to tenants based on the amount of net excess utility overbilling due to billing errors assessed to the tenant's account from October 1, 2014, though November 1, 2016.

RRHA agreed to forego collection of net excess utility underbilling due to billing errors from October 1, 2014 through November 1, 2016, in the amount of $35,834.68.

13

d.   Method for distributing credits to current and former tenants

For current tenants, distribution will be made in the form of a credit to the tenant's account.  For former tenants, distribution will be first applied as a credit to any debits (or money owed) by that tenant as reflected in RRHA's local accounting system. For those former tenants where after applying this credit to any debits (or money owed), there exists a credit on that tenant's account, a refund will be sent to that tenant's best available address.  RRHA is responsible for costs associated with the distribution of funds and credits.  After seven (7) years, any unclaimed funds are to be placed into a separate energy efficiency fund administered by RRHA for the benefit of existing RRHA public housing residents who need assistance maintaining energy efficient homes.

For current tenants, if after applying all available credits to that tenant's account, there remains a debit (amount owed) for excess utilities on their account, the tenant will be offered a payment arrangement.

RRHA is responsible for all costs associated with providing notice to all class members. Plaintiffs' counsel will work with RRHA on a cost-efficient way to comply with the due process requirements for getting class notice to former tenants by using the best available address that can be efficiently obtained for them. RRHA is the final arbiter on the amount to expend on notice, subject to ultimate Court approval of adequate notice to the class.

Within 20 days of the Court's preliminary approval of the settlement and class notice, RRHA will provide notice to each class member at their best available address explaining the terms of the Settlement Agreement. Plaintiffs' Counsel will be responsible for establishing

14

procedures for providing further information and responding to class members' questions. The class notice will specify the percentage of the excess utility fees reimbursed under the settlement along with the amount of their reimbursement. The settlement agreement and notice will provide that class members may opt out, along with clear instructions for how to do so.

The settlement includes $100,000.00 in attorneys' fees and costs, payable to Legal Aid Justice Center and representing less than 26% of the total hours spent by Plaintiffs' attorneys on this case multiplied by the respective lodestar rates of those attorneys representing reasonable rates for attorneys of comparable experience in the same market area.  The amount of attorneys' fees is disclosed to class members on the notice.

The provisions of this settlement distribute significant relief to class members as well as ameliorating excess utility charges going forward, provide for customary attorney's fees and costs, and establish a beneficial use of any unclaimed funds without reversion to RRHA. This evidence amply demonstrates that the settlement is facially sound and reasonable in light of the parties' claims and defenses.

## II. Requirements for Certification of a Proposed Settlement Class

The parties seek certification of a settlement class under Rule 23(b)(3) of all current and former Richmond public housing residents from November 1, 2012, through October 31, 2016, who were subject to RRHA's procedures regarding utility allowance and late fees. Federal Rule of Civil Procedure 23(a) requires that in order for a class action to proceed it must be shown that:

> (1)  The class is so numerous that joinder of all members is impracticable; (2) There are questions of law or fact common to the class; (3) The claims or defenses of the

representative parties are typical of the claims or defenses of the class; and, (4) The representative parties will fairly and adequately protect the interest of the class.

Rule 23(b)(3) authorizes certification if the four prerequisites of Rule 23(a) are met, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163-64 (1974). Rule 23 also contains an implicit threshold requirement that proposed class members be "readily identifiable," i.e., a court must be able to "readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). District courts are to conduct a "rigorous analysis" into whether the requirements of Rule 23 are met before certifying a class. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982). The policy in this Circuit is "to give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for affected parties and ... promote judicial efficiency." *In re A.H Robins Co.,* 880 F.2d 709, 740 (4th Cir. 1989) (internal quotation marks omitted).

### A.  The class exceeds 3500 and is sufficiently numerous.

Rule 23(a)(1) requires the class to be so numerous that joinder of all parties is impracticable. A party seeking class certification need not show that joinder of all parties is impossible, but merely that it is extremely difficult or inconvenient to join all members of the class. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Olvera-Morales v. Intern. Labor Management Corp.*, 246 F.R.D. 250, 255 (M.D.N.C. 2007). "No specified number is needed to

16

maintain a class action;" rather, courts should apply Rule 23(a)(1) in light of the particular circumstances of the case. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). For example, classes of eighteen and seventy-four persons have been found to satisfy the numerosity requirement. S*ee id.* (class of seventy-four persons is "well within the range appropriate for class certification"); *Cypress v. Newport News General & Nonsectarian Hospital Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (class of eighteen members is sufficient); *Talbott v. GC Services Ltd. Partnership*, 191 F.R.D. 99, 102 (W.D. Va. 2000) ("Where the class is 25 or more, joinder is usually presumed impractical").

The plaintiff class unquestionably satisfies the numerosity requirements of Rule 23(a)(1). It includes not only the current residents of the 3507 individually-metered units of public housing at issue in this case, but also any former residents of those units who lived there on or after November 1, 2012.  These current and former residents are all readily ascertainable through RRHA's electronic rental ledger records covering the time period at issue in this case. The class exceeds 3500 individuals and thus is sufficiently numerous to meet the requirements of Rule 23(a).

Further, the impracticality of joinder is not determined by a numerical test alone. *Ballard v. Blue Shield of Southern West Virginia*, 543 F.2d 1075, 1080 (4th Cir. 1976).  Relevant considerations include the geographic dispersion and limited financial resources of class members, and the negative impact on judicial economy if individual suits were required. *See Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532, 536 (E.D.N.C. 1995) (citation omitted).  Such concerns are particularly appropriate in instances such as the case at bar, where

17

the class is composed primarily of indigent persons. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974) (noting the value of class actions in allowing "the poor or uninformed to enforce their rights.").

The class in this case consists of individuals who qualify or have qualified for public housing assistance and thus have insufficient financial resources to meet their subsistence needs. Therefore, members of the class are almost by definition low-income persons lacking the financial means to pursue individual legal actions.[3] The settlement class is thus sufficiently numerous that joinder of all parties would be impractical under Rule 23(a)(1).

**B.  Numerous questions of law and fact are common to the class.**

The "commonality" factor in Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. *McGlothlin v. Connors,* 142 F.R.D. 626 (W.D. Va. 1992); *Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986). The commonality factor has been liberally construed, and courts have given it a "permissive application so that common questions have been found to exist in a wide range of contexts." *Rodger,* 160 F.R.D. at 537 (citation omitted). Moreover, "[f]actual differences among the class members' cases do not violate the rule, so long as a common legal theory is shared." *Woodward v. Online Information Services,* 191 F.R.D. 502, 505 (E.D.N.C. 2000) (citing *Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1275 (4th Cir. 1981).

---

[3] While not all members of the class currently reside in public housing, and thus it is possible that some are no longer low-income, it is unlikely that many class members fall into this category, and the class remains composed primarily of low-income persons.

The United States Supreme Court has stated:

Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." [citation omitted] For in such cases, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). In *Wal-Mart Stores v. Dukes,* 131 S. Ct. 2541, 2550-52 (2011), the Supreme Court revisited the question of commonality and held that for commonality to exist, the plaintiffs' claims "must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Plaintiffs easily meet this requirement.

As noted above, this suit stems from RRHA's failure to properly determine and implement the electric utility allowances applied to public housing residents. Allegations of a "policy" or "practice" of treating an entire class unlawfully—such as alleged here—satisfy the commonality requirement. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557-58 (11th Cir.); *Talbott*, 191 F.R.D. at 103; *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 287 (W.D. Mich. 2001) ("In cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure.")

Here, all class members were at some point subject to RRHA's utility allowance and late fee procedures, and the same policy was thus applied to all of them: those who exceeded the

utility allowance set for the applicable period were charged excess utilities and those who did not

make payment were charged late fees as rent.

RRHA has stipulated that questions of law and fact are common to the class (*see* Exhibit

6, Defendant's Stipulation of Facts). Questions of law and fact common to the class relate to the

validity of the utility allowance, whether the allowances were lawfully implemented, and the

effect of RRHA's late fee procedures on residents. All these factual and legal issues thus relate to

practices and policies that RRHA applied to tenants as a group. Hence, Plaintiffs easily satisfy

the commonality requirement of Rule 23(a)(2) in this case.

### C.  The Plaintiffs' claims are typical of the claims of the classes

The "typicality" factor in Rule 23(a)(3) says the claims or defenses of the representative

parties must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3).  While

similar to the commonality requirement, which examines the claims of the class, the typicality

requirement focuses on the named plaintiffs' claims. *Tatum v. R.J. Reynolds Tobacco Co.,* 254

F.R.D. 59, 64 (M.D.N.C.2008). "Typicality does not mean identicalness." *Woodward,* 191

F.R.D. at 505. Rather, the typicality requirement is met when class representatives show that: (1)

"their interests are squarely aligned with the interests of the class members;" and (2) "their

claims arise from the same events or course of conduct and are premised on the same legal

theories as the claims of the class members." *Fisher v. Virginia Elec. And Power Co.,* 217 F.R.D.

201, 212 (E.D. Va. 2003) (citing *Jeffreys,* 212 F.R.D. at 322). *See also Talbott,* 191 F.R.D. at 104

("[T]he premise of the typicality requirement is easily stated: as goes the claim of the named

plaintiff, so go the claims of the class") (citing *Broussard v. Meinike Discount Muffler Shops,*

155 F.3d 331, 340 (4th Cir. 1998)).  An appropriate typicality analysis includes: 1) review of the elements of plaintiffs' prima facie case, 2) the facts on which plaintiff would necessarily rely to prove each element, and 3) examination of the extent to which those facts would also prove the absent class members' claims. *Dieter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006)

"In government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members." *Carr v. Wilson-Coker*, 203 F.R.D. 66, 75 (D. Conn. 2001) (quoting 5 *Newberg* § 23.04); *Rodger*, 160 F.R.D. at 538 (stating that courts "will generally look to the defendant's alleged conduct and the legal theory advanced by the plaintiff to determine whether certification is appropriate.… A court may determine that the typicality requirement is satisfied even when the plaintiffs' claims and the claims of the class members are not identical.") (citation omitted).

The claims of the named Plaintiffs are typical of the claims of the settlement class.  All of the Plaintiffs have been subject to the RRHA's utility allowance and late fee procedures and all have paid excess utility fees charged by RRHA between November 2012 and October 2016.  The Plaintiffs' claims, like the claims of the class they represent, arise from RRHA's utility allowance and late fee procedures and depend on whether the use of that utility allowance was improper and contrary to law.  If the Plaintiffs were to succeed in their own claims, they would have to establish that RRHA violated the Housing Act, the dwelling lease, the ACC, and the Virginia Consumer Protection Act in the same manner as is alleged with regard to the other class members. Further, the interests of the named Plaintiffs and the settlement class are aligned

because the settlement requested will benefit the Plaintiffs in the same way it benefits the settlement class.

### D.  The Plaintiffs will adequately protect the interests of the classes

The final prong of Rule 23(a), the "adequate representation" factor, requires the Court to find that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Fourth Circuit looks for two separate requirements: the named plaintiffs must not have any interests antagonistic to the class, and they must be represented by adequate class counsel. *See Woodward,* 191 F.R.D. at 506 (citations omitted).

As adequate class representatives, the named plaintiffs "must possess the same interest and suffer the same injury shared by all members of the class [they] represent." *Schlesinger  v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974).  A party's representative status may be defeated only when "the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). Similarly, the fact that other class members may possess different or alternative claims for state law violations or claims for actual damages does not preclude a finding of adequacy where few such claims had been filed. *Sandberg v. Virginia Bankshares, Inc.,* 891 F.2d 1112, 1119 (4th Cir.1989), *reversed on other grounds*, 501 U.S. 1083 (1991).

Here, the interests of the named Plaintiffs are aligned with those of the class they represent: their claims and damages sought are identical to those of the proposed class.  At the same time, the proposed settlement provides class members with the ability to "opt out" and

22

thereby pursue any claims that they may have for actual, statutory, or punitive damages if they choose.  The named Plaintiffs have no interests which are antagonistic to the class, and they are adequate representatives for purposes of resolving this class for settlement purposes.  (See Exhibits 1-5, Decl. of class representatives).  There is no potential for conflicting interests in this action.

The adequacy test also requires that the proposed class representative engage counsel who are "qualified, experienced, and generally able to conduct the proposed litigation...." *Kirkpatrick v. J.C.  Bradford & Co.,* 827 F.2d 718, 726 (11th Cir. 1987) (quoting *Griffin v. Carlin,* 755 F.2d 1516, 1532 (l1th Cir. l985).  In appointing class counsel, Fed. R. Civ. P. 23(g)(A) requires the court to consider: 1) the work counsel has done in identifying and investigating claims in the action; 2) counsel's experience handling class actions, other complex litigation, and the types of claims asserted; 3) counsel's knowledge of the relevant law; and 4) the resources that counsel will commit to representing the class.

RRHA has stipulated to the adequacy of class counsel. (Exhibit 6, Defendant's Stipulation of Facts).  Here, the current posture of this case demonstrates that proposed class counsel have pursued this matter vigorously to this point. Plaintiffs' counsel have spent significant time dating back to late 2014 analyzing data and documents provided by RRHA to identify and investigate the claims in this action. Plaintiffs' counsel all have substantial experience handling either class actions, other complex litigation, or federally subsidized housing claims, including public housing, *see* (Decl. of Sylvia Cosby Jones, Exhibit 7).  Further, Plaintiffs' counsel is experienced in class action litigation, *see* Decl. of Thomas Domonoske,

23

Exhibit 8.  Thus, counsel is "qualified, experienced, and able to vigorously conduct the proposed litigation." The requirements of Rule 23(a)(4) are thus met.

### E.  The proposed settlement class satisfies the requirements of Rule 23(b)(3).

In addition to the requirements of Rule 23(a), the Plaintiffs must also satisfy one subdivision of Rule 23(b). Under Fed. R. Civ. P. 23(b)(3), an action that satisfies the threshold prerequisites for certification may be maintained as a class action if the court finds that: (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The claims of the class representatives satisfy those requirements.

1.  <u>Common questions predominate.</u>

Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24, (1997)); *Lienhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 142 (4th Cir. 2001).  The predominance requirement is clearly satisfied when the common allegations allow the district court to determine liability for the class as a whole. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564-66 (6th Cir. 2007).[4] The need for individualized damages determinations does not destroy

---

[4] Even where common questions of law and fact are not determinative of the entire case, a class may still be certified under Rule 23(b)(3). *See* 7AA C. Wright  A. Miller, *Federal Practice and Procedure: Civil* § 1778 ("[W]hen one or more central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.")

predominance or foreclose class certification. *See Gunnells v. Healthplan Svcs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003) ("[I]n actions for money damages under Rule 23(b)(3), courts *usually* require individual proof of the amount of damages each member incurred") (citations omitted) (emphasis in original); *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (finding common questions predominate under Rule 23(b)(3) where class members' individual damages would all be determined by application of the same formula).

Here, Plaintiffs seek to remedy common legal grievances based on RRHA's violations of the United States Housing Act of 1937, the lease provisions which Plaintiffs were required to sign, the Annual Contributions Contract which the RRHA enters into with HUD by its failure to properly set and administer electric utility allowances, and the Virginia Consumer Protection Act. Shared claims predominate over questions, if any, affecting only individual members of the class, and these common questions should be resolved on a class wide basis. In addition, the calculation of settlement payments to individual class members is simple and can be made simply by reference to RRHA's records of excess utility payments for charges incurred for usage from November 1, 2012, through November 1, 2016. *See Gunnells*, 348 F.3d at 429.

    2.   <u>A class action is superior to other methods of adjudication.</u>

Finally, this Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b)(3). *Lienhart,* 255 F.3d at 147. The factors to be considered here in determining the superiority of the class mechanism are (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4)

manageability. *Newsome v. Up-To-Date Laundry, Inc.,* 219 F.R.D. 356, 365 (D. Md. 2004); *Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 220 (D. Md. l997).

Efficiency is the primary focus in determining whether a class action is indeed superior. *Talbott,* 191 F.R.D. at 106 (citation omitted).   In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).   To determine superiority, courts also consider the anticipated amount of recovery for each plaintiff, noting that class actions are particularly appropriate where multiple lawsuits are infeasible because of the small amount of any individual remedy.  *See Advisory Committee Note to 1966 Amendment to Rule 23.* In so doing, certification enables the court to manage a large number of small- and medium-sized claims when, as here, the costs of discovery and trial could easily prevent any individual adjudication of those claims, and thus preclude any relief to the class.  See *Lozada v. Dale Baker Oldsmobile, Inc.,* 197 F.R.D. 321, 332-33 (W.D. Mich. 2000).

Here, a class action is clearly superior to any other method, and very likely the only feasible method of adjudicating the claims presented by Plaintiffs' complaint. Individual actions, individually controlled by individual Plaintiffs, would burden both the Court and the class. The limited economic resources of most class members and the relatively small amounts most of them are likely to recover, around several hundred dollars per person, make individual actions impractical. Rule 23(b)(3)(A). *See Beattie*, 511 F.3d at 566-67 ("Here, individual suits would yield only a small amount of damages . . . Such a small possible recovery would not encourage

26

individuals to bring suit, thereby making a class action a superior mechanism for adjudicating the dispute.").  To Plaintiffs' knowledge, no other litigation concerning the issues in Plaintiffs' complaint has been commenced by or against class members. Rule 23(b)(3)(B) (See Exhibits 1-6, Decl. of class representatives).  Concentration of the claims in a single forum is desirable, and this forum is appropriate, given that RRHA and the majority of the class members are in Richmond. Rule 23(b)(3)(C).

Finally, management of this class action should not present any particular difficulties. Rule 23(b)(3)(D). The class numbers in the low thousands rather than tens of thousands.  While not all the class members currently reside in public housing, a substantial number of them do, and those who do not are unlikely to be so geographically dispersed as to make the case or the settlement unmanageable.  Further, the damages sought for class members are simply a refund of a portion of the excess utility fees and late fees they were charged, an amount easily derived from RRHA's payment records.

### III.  The Court Should Preliminarily Approve the Terms of the Settlement.

The principal underlying concern for the Court in reviewing a proposed class settlement is the protection of class members whose rights may not have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991).  In determining whether to grant preliminary approval to the Class Settlement, this Court must make a preliminary determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015). *See Manual for Complex Litigation (Fourth),* § 21.632 (4th ed. 2004).

27

The Fourth Circuit has bifurcated the analysis into consideration of fairness of negotiations of the settlement and the adequacy of the consideration to the class. *Jiffy Lube,* 927 F.2d at 158-59; see also *In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1383-84 (D. Md. 1983); *Beaulieu v. EQ Indus. Services, Inc.,* 2009 WL 2208131 (E.D.N.C. 2009). While the Court must assess the strength of plaintiffs' claims, it should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981). Moreover, where a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair. *City P'ship Co. v. Atlantic Acquisition Ltd P 'Ship,* 100 F.3d 1041, 1043 (1st Cir. 1996); *Rolland v. Cellucci,* 191 F.R.D. 3, 6 (D. Mass 2000).

### A. Fairness:  The proposed settlement was the result of "arm's-length" negotiations under the supervision of an experienced mediator.

Factors relating to the fairness of a proposed settlement are: (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue. *Jiffy Lube,* 927 F.2d at 158-59.

1. <u>Posture at time of settlement</u>

At the time of settlement, RRHA had already shared many documents and records with Plaintiffs through both Freedom of Information Act requests and voluntary production, including data files of excess utility charges to class members.  The parties have also engaged in extensive settlement discussions since early 2016, participating in person and by counsel in mediation with the Honorable B. Waugh Crigler (Ret.) on two separate dates over several months, and multiple

28

phone calls and emails. Follow-up negotiations were held on July 21, 2017, and October 13, 2017, before the Honorable Magistrate Judge Roderick C. Young. The settlement now before the Court is the result of extensive negotiation conducted by parties minutely familiar with each other's positions on the merits of the case.  It bears the hallmarks of an arms-length agreement reached by parties with knowledge of the facts and the strengths and weaknesses of each other's positions.

     2.  <u>Extent of discovery</u>

Informal discovery taken in this case includes the review of RRHA's database files of excess utility charges assessed to class members, and the inspection of hundreds of pages of documents produced voluntarily by RRHA. The informal discovery conducted showed not only that the RRHA acted uniformly with regard to the class, but this discovery also allowed the Plaintiffs to understand the RRHA's system of billing for excess utilities and late fees, and the extent of the Plaintiffs' overpayments over the years since 2012.  By the time the parties reached settlement, the essential facts of the case were undisputed with regard to RRHA's excess utility billing practices and their adoption and continued use of the 2012 and 2014 allowances.  As such, the settlement was reached with an understanding of the merits of the case and the possible defenses by RRHA.

     3.  <u>Circumstances surrounding negotiation</u>

As set forth above, the settlement discussions were conducted before experienced and impartial mediators. Negotiations occurred in person two times in 2016 in Richmond before the Honorable B. Waugh Crigler (Ret.), as well as by phone in conversations after both mediation

sessions. Follow-up negotiations were held on July 21, 2017, and October 13, 2017, before the Honorable Magistrate Judge Roderick C. Young.  The follow-up negotiations ultimately produced an improvement in the settlement for the class. These facts militate in favor of finding that the circumstances of the settlement were fair.

    4.  <u>Opinion of counsel</u>

    Counsel for Plaintiffs endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration.  *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *In re MicroStrategy Inc. Sec. Litig.,* 148 F. Supp.2d 654, 665 (E.D. Va. 2001); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981).

    After initial discovery and vigorous settlement negotiations, counsel for the parties have agreed to the proposed Class Settlement Agreement as a just and appropriate resolution of all claims. Class counsel recommend this settlement to the Court based upon their collective experience as federal court litigators and experienced class counsel.  The Class Settlement Agreement is the product of extensive arm's-length negotiations by experienced counsel, which were undertaken in good faith after factual investigation, discovery, and legal analysis. Thus, the parties in this litigation and their counsel have the best information available to judge the strengths and weaknesses of the parties' claims and defenses, and the costs and benefits of continued litigation versus compromise.  Armed with this detailed knowledge, the parties entered

into earnest settlement negotiations, and after months of continuous negotiations, the parties

reached an agreement in principle to settle the claims.

### B. The Class Settlement Terms in Relation to the Strength of Plaintiffs' Claims Demonstrate that this Settlement is Fair, Adequate, and Reasonable.

In evaluating the proposed Class Settlement, the Court should also consider the strength

of Plaintiffs' case on the merits balanced against the amount offered in the Class Settlement. *See*

*M. Berensen Co., Inc. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 823 (D. Mass.

1987); *Plummer v. Chemical Bank,* 579 F. Supp. 1364, 1370, 1372-74 (S.D.N.Y. 1984).  In this

process, however, a court must "avoid deciding or trying to decide the likely outcome of a trial

on the merits."  *In re Nat 'l Student Marketing Litig.,* 68 F.R.D. 151, 155 (D.D.C. 1974). In light

of the fact that the class members will receive, at a minimum, a refund of no less than 22 percent

of the excess utility fees they were charged, and that there are substantial risks involved in

continued litigation, the settlement is more than reasonable.

An analysis of the adequacy of these terms and relevant factors to be considered may

include: (1) the relative strength of the plaintiffs' case on the merits, (2) any difficulties of proof

or strong defenses the plaintiffs would likely encounter if the case were to go to trial, (3) the

expected duration and expense of additional litigation, (4) the solvency of the defendant and the

probability of recovery on a litigated judgment, and (5) the degree of opposition to the proposed

settlement. *See In re Jiffy Lube,* 927 F.2d at 159; *Clark v. Experian Information Solutions, Inc.,*

2004 WL 256433 (D.S.C. 2004).

While Plaintiffs believe that they were likely to prevail in their claims, RRHA has presented several potential arguments that could defeat liability or limit damages. In particular, RRHA has argued that the Plaintiffs must show they were conservative users of electricity to set the damages for each person who paid overcharges.  If they prevailed in this argument and Plaintiffs were required to show that they were conservative users of electricity in order to prevail, it is possible that a jury would not judge their energy usage to be sufficiently conservative. Plaintiffs' recovery would be significantly reduced.

Although extensive pre-litigation sharing of documents has been conducted, much work would still be necessary to bring this case to trial.  No depositions have been conducted.  In addition, the parties would likely move for summary judgment, given the apparent lack of factual dispute thus far in the case.  A trial on the merits of this action or on damages would entail considerable expense and would not necessarily end the litigation, given the right of appeal. Avoiding such expense and potential delay will save both the parties and the Court significant time, money, and precious judicial resources, and is a further appropriate reason for the Court to approve preliminarily the Class Settlement Agreement. *See Slomovics v. All For A Dollar, Inc.,* 906 F. Supp. 146, 149 (E.D.N.Y. 1996) (stating that where litigation is potentially lengthy and will result in great expense, settlement is in the best interest of the class members); *see also Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) (noting the important justifications including reduction of litigation and litigation-related expenses favoring the settlement of class action lawsuits).

If the Court grants preliminary approval, class members will receive notice explaining the terms of the Class Settlement Agreement and their right to object or opt-out.  While the degree of opposition to the Class Settlement Agreement cannot be known with any certainty, the lack of any other competing classes or individual cases support the strength of the settlement and the likelihood that it will stand.  For these reasons, the opinion of all counsel involved is that the terms of the settlement agreement represent a fair, reasonable, and adequate resolution of the claims alleged.

## IV.  Notice to Class Members

### A.  The class notice is reasonable in form and content

Reasonable notice must be provided to class members to allow them an opportunity to object to the proposed Settlement.  *See Durrett v. Housing Authority of City of Providence,* 896 F.2d 600, 604 (1st Cir. 1990).  Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs."  In a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e).  *See Carlough v. Amchem Products, Inc.,* 158 F.R.D. 314, 324-25 (E.D. Pa. 1993).  With respect to a class certified under subsection (b)(3), Rule 23(c)(2)(B) requires the following notice:

> In a class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances.   The Court must provide for individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;

> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  In addition, the Manual for Complex Litigation sets forth several elements that a notice of settlement should include. *See Manual for Complex Litigation (Fourth),* § 21.312 (4th ed. 2004) (a notice should, *inter alia*, describe the options open to class members and the deadlines for taking action; the terms of the settlement; the attorneys' fees and compensation to class representatives; the time and place of the hearing; and the method for opting out or objecting).

In this case, the proposed notice meets the requirements of Rule 23(c)(2) and 23(e), because it includes:  (1)  the case caption; (2) a description of the class; (3) a description of the claims; (4) a description of the Settlement; (5) a statement of the attorneys' fees to be paid to Plaintiffs' Counsel and the additional payments to be made to class representatives; (7) the Fairness Hearing date; (8) a statement that class members may hire their own attorney if they wish; (9) a statement of the procedure and deadline for filing objections to the Settlement; (10) a statement of the procedure and deadline for filing requests for exclusion; (11) a statement of the consequences of  exclusion; (12) a statement of the consequences of remaining in the Class; and (13) the manner in which to obtain further information.  *See also In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 496 (D.N.J. 1997). Because each member of the class

can be identified, actual notice will be sent by First Class U.S. mail, as well as posted at the public housing sites at issue and on RRHA's and Plaintiffs' counsel's websites.

The proposed notice and counsel's proposed methods of distribution via mail, posting, web page, and through efforts to locate missing class members, constitute adequate notice to the class members, reasonably calculated to provide the class members with actual notice of their rights. As such, the Court should approve the notice method.

## CONCLUSION

For the reasons stated above, the Plaintiffs request this Court to certify a settlement class, appoint class counsel, and preliminarily approve the terms of the settlement and order the proposed notice to be mailed to class members forthwith.

Respectfully submitted this 5th day of February 2018.

 /s/ Sylvia Cosby Jones_____
Sylvia Cosby Jones, VSB # 35870
Email: sylvia@justice4all.org
Brenda Castañeda, VSB # 72809
Email: brenda@justice4all.org
Mary E. DeVries, VSB # 88186
Email: maryd@justice4all.org
Marcellinus L.M.B. Slag, VSB # 29833
Email: marcel@justice4all.org
LEGAL AID JUSTICE CENTER
123 East Broad Street
Richmond, VA 23219
(804) 643-1086
(804) 643-2059 Facsimile

Thomas D. Domonoske, VSB # 35434
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
(757) 930-3660

(757) 930-3662 Facsimile
Email: tom@clalegal.com

*Counsel for Plaintiffs*